

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

March 1, 1939

.r. Joe C. Gladney
Criminal District Attorney
Rusk County
Henderson, Texas

Dear Sir:

Opinion No. O-583
Re: Apportionment of County-wide
Equalization Tax to County Line
School District Under Article
2746e Civil Statutes

We have carefully considered the question submitted in your letter of February 2, and again presented in your brief sent us with your letter of February 15.

We wish to express our sincere appreciation and respect for the excellent brief you prepared on this question, which has been of inestimable assistance to us.

The question as stated in your letter of February 2 is:

"Rusk county has levied and collected the County-wide Equalization Tax authorized by said Article 2746e, and a distribution of the funds derived therefrom is to be made within a few days. In all probability, there will be some question as to the apportionment to be made to the several school districts near the county line and which school districts extend beyond the boundary of Rusk county and embrace a part of the adjoining county where said tax is not levied and collected. There are to be found in such county line school districts a large number of pupils, who, though they are regularly enrolled on the school census rolls of the school district, are not residents of Rusk county, even though the district is compelled to provide educational opportunities for them.

"Consequently the following question arises:
Is the County Board of School Trustees authorized

586

under the provisions of Article 2744e to distri-
bute the money collected from the tax on a per
capita apportionment confining the number of
per capitas to those pupils only who are actual
residents of Rusk county? Or, to put the question
in different words: Shall the County Board of
School Trustees distribute the money collected
to the common and independent school districts
of the county on a per capita basis, that is,
according to the number of regularly enrolled
pupils on the scholastic census roll living with-
in said school district, regardless of whether
such regularly enrolled pupils are residing out
of Rusk county and in an adjoining county where
such tax is not being levied or collected?"

Article 2744e, Revised Statutes (being Chapter
231, p. 454, of the Acts of the Forty-fifth Legislature,
1937) provides that certain counties in the prescribed
classification, may, upon election approving same, assess
and collect a county-wide equalization tax of twenty-five
cents per $100.00 valuation, the proceeds of such tax
(under Section 6 of the Act) to be distributed "to the
common and independent school districts of the county on
the same basis that the State per capita apportionment is
distributed among said common and independent school dis-
trict."

The Act itself prescribes the basis of "the State
per capita apportionment" as the rule by which this county-
wide tax is to be distributed. We must look, therefore,
to the rules governing "the State per capita apportionment"
as a guide in determining the instant question.

Article 7, Section 5, of the Constitution of
Texas provides "* * * and the available school fund herein
provided shall be distributed to the several counties
(underlining ours) according to their scholastic popula-
tion and applied in such manner as may be provided by law."
The Legislature prescribed the procedure for carrying out
the purposes of this provision of the Constitution by Ar-
ticle 2663, R. S. 1925, which reads in part:

"On the first of each month, the State
Superintendent shall prorate to the several
counties, cities and towns and school districts
constituting separate school organizations,

r. Joe C. Gladney, March 1, 1939, Page 3

according to the scholastic population of each, the available school money collected during the preceding month * * *"

In construing the meaning and intent of this statute we must bear in mind the constitutional provision to which it relates. Under the statute the State Superintendent may remit funds directly to the "seperate school organizations" which constitute the educational system of a county. BUT - when any question of proration between counties arises - the constitutional provision must be followed, and it requires equality of distribution among counties based on scholastic population. Such a question of apportionment of the available school fund under the Constitution arises in the case of every county-line school district. It cannot be seriously contended that such a county-line district would be entitled to claim its share of the available school fund as allotted to each county, based upon the scholastic population of the district in both counties. Such a procedure would give to county-line districts lying in two counties twice the proportion of the available fund allotted to districts lying wholly within one county. It follows, therefore, that a county-line school district may receive its proportionate share of the State available school fund allotted to each county (under the Constitution) on the basis of such district's Scholastic population in such county only.

Inasmuch as Article 2744e expressly provides that the proceeds of the county-wide tax therein provided shall be distributed "on the same basis that the State per capita apportionment is distributed" it would seem to follow that a county-line school district would be entitled to claim its share of a county-wide tax based only on its scholastic population in that county. Applying this principle to the specific situation outlined in your brief, of the Carlisle School District which lies partly in Cherokee and partly in Rusk County, it is our opinion that the Carlisle District is entitled to share in the proceeds of the Rusk county equalization tax, based only on its scholastic population in Rusk county and not on its scholastic population in both counties.

We have been forced to this conclusion not merely by reason of the application of the "basis" set out in the statute itself, as outlined above- but also for the reason

that we would have serious doubts as to the constitutionality of Article 2744o, if the contrary application were made. If the Carlisle School District is to share in the proceeds of a tax on property in Rusk county, based on its scholastic population in both Rusk and Cherokee counties - then Rusk county taxes would be used to educate Cherokee county children. Such diversion of the taxes or assets would prejudice the rights of Rusk county taxpayers. Terrell vs. Middleton, Tex. S. Ct. 1917, 191 S. W. 1138; Board of School Trustees of Laredo vs. Webb County, 64 S. W. 466, writ of error refused.

We are not unmindful of the inequality of the tax burden mentioned in your brief between property in the two parts of the Carlisle School District, due to the higher percentage valuation in Cherokee than in Rusk county. As was said in Simpson vs. Pontotoc Common County Line School District No. 31, 275 S. W. 469, to which you have referred us: "Exact equality and uniformity in taxation is probably unattainable * * *". While to permit the Cherokee County scholastics to be counted in distributing the Rusk county equalization tax, might tend to offset the existing inequality, we do not believe this very laudable purpose justifies resort to a means not indicated by the statute nor sanctioned by the constitution.

The reason for the existent inequality of tax burdens between the Cherokee and the Rusk county parts of the district is inherent in the very nature of county-line districts. We cannot try to correct the evil by a strained construction of this statute.

We have given careful consideration to the case of Simpson vs. Pontotoc Common County Line School District, 275 S. W. 449 (writ of error refused) to which you have referred us in your brief. In that case various taxpayers, school children and parents of school children of that part of Llano County which had been included in a county-wide school district with parts of Mason and San Saba counties brought suit to seek to declare the district void. It had been created by special act of the Legislature in 1923 under the express authority of the constitutional amendment, Article 7, Section 3, adopted in 1909. Plaintiffs contended they were injured by the creation of the county line district in that the Llano County School Permanent Fund yields an income of $5.00 per year per scholastic, whereas the Mason and San Saba County school funds yield only fifty cents and $1.00 respectively. The Austin Court of Civil Appeals sustained the trial court's dismissal of the suit

Mr. Joe C. Gladney, March 1, 1939, Page 5

on demurrer, saying:

"The purpose of the constitutional amend-
ment authorizing county line districts was no
doubt to bring larger benefits and increased
facilities to the scholastics affected; and it
is peculiarily a legislative function in creat-
ing such districts, to determine whether these
worthy objects will be thereby accomplished.
The discretion of that body is not subject to
review, except, perhaps, in case of palpable
abuse."

Referring to the inequality of value of the
school lands in the three counties the court said, at
page 452:

"It is not seriously questioned by appel-
lants that insofar as the inequality in these
per capita allotments is concerned, adjustments
might be made so as to give to those entitled
to the greater per capita the benefit of the
excess * * *. Any attempt at an unlawful diver-
sion of the fund or any part thereof may be pre-
vented by appropriate legal action, and such
portion of the fund so sought to be diverted
thereby protected and held until such time as
legal means for its use in behalf of the bene-
ficiaries were provided.

"* * * the grants created a trust fund
for the benefit of the scholastics of the
county which could not be diverted to other
purposes or beneficiaries. The administra-
tion of the fund within these limitations,
is subject to legislative control."

It is clear from the above quoted language of
the opinion that the court, by upholding the validity of
the special act creating the district, did not sanction
the diversion of any of Llano County's permanent school
fund for the benefit of Mason and San Saba County school
children, but rather expressly stated that this was a
trust fund "which could not be diverted to other purposes
or beneficiaries." The court contemplated that the ad-
ministration of the district should take cognizance of the
differences in the permanent school funds of the three
counties out of which the district was carved when it said:

Mr. Joe C. Gladney, March 1, 1939, Page 6

"* * * we are not prepared to hold that under the ample
powers given the trustees of the district in regard to
the establishment, maintenance, and control of the
schools therein, the benefit of this excess might not
be provided for in the way of a longer school term for
the scholastics entitled to such excess."

The case of Mumms vs. Marrs, 40 S. W. (2d) 31
(Tex. Supreme Court, 1931) cited in your brief, holds that
the Legislature may, as it did in the Rural Aid Appropria-
tion Act, use for general Appropriations to education, a
different basis than that laid down in the Constitution
for the distribution of the income from the permanent school
fund. It does not follow that any taxing authority, be it
a state or a county may expend its tax revenues for purposes
beyond its jurisdiction.

In Austin Independent School District vs. Marrs,
41 S. W. (2d) 9, the Commission of Appeals held that under
Article 2700 of the Civil Statutes, the Austin Independent
School District must pay its pro rata share of the salary
and expenses of the County School Superintendent. The
Court based its decision in part on the fact that the Austin
District is "one of the immediate beneficiaries of various
duties which the county superintendent is required to per-
form in the promotion of public school affairs throughout
the county." Such justification cannot be made for the ex-
penditure of Rusk County equalization taxes for the benefit
of school children in an adjoining county.

The following quotation from Judge Cureton's opin-
ion in Love v. City of Dallas, 40 S. W. (2d) 20, seems to
us almost conclusive of the point here at issue: "Since the
Constitution does not permit the taxation of the people of
a school district for the support of that district, except
upon a vote of the people of that district, it is not de-
batable that the Legislature cannot compel one district to
use its funds and properties for the education of scholas-
tics from another district, without just compensation." This
principle should apply with equal force as between parts of
two counties within a common-line school district.

It has been with extreme reluctance that we have
been forced to reach a conclusion contrary to the one so
ably presented in your valued brief. In order to clarify

Mr. Joe C. Gladney, March 1, 1939, Page 7

this opinion, we are taking the liberty of attaching a
copy of your brief hereto. We are also returning the
original of your brief herewith in accordance with your
request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Walter R. Koch*

Walter R. Koch
Assistant

WK:LW

APPROVED:

*Gerald C. Mann* mph
ATTORNEY GENERAL OF TEXAS